HEARD APRIL TERM, 1878.

## SUSONG *vs.* VAIDEN.

Whatever may be the rule elsewhere, it is the well-settled law of this State that where a joint note is given by a principal debtor and a surety, whose only obligation arises from the fact that he signed the note, the death of such surety—the principal debtor surviving—does not discharge his estate or representatives from the obligation he incurred in giving the note.

Erroneous instructions to the jury upon immaterial points which could not affect the verdict is no ground for a new trial.

The rule that, where the obligation of the surety and principal is joint, the death of the surety leaving the principal surviving, discharges the estate of the surety, is not the rule in this State.

BEFORE NORTHROP, J., AT UNION, FEBRUARY, 1877.

Action by Alexander E. Susong against William H. Vaiden, and Margaret E. Bishop as administratrix of L. Gordon Bishop, deceased.

The judgment was for the plaintiff, and the defendant, Margaret E. Bishop, appealed.

The case is fully stated in the opinion of the Court.

*Munro & Munro,* for appellant :

The action is upon a joint promissory note made by W. H. Vaiden and L. Gordon Bishop, payable to the plaintiff. The note was given for a debt due by Vaiden alone to the plaintiff, and Bishop was a surety only. Bishop, the surety, dying, leaving Vaiden, the principal, surviving, the action is brought against Vaiden and the administratrix of Bishop. Vaiden is insolvent.

The only point in this case is whether the estate of Bishop, the surety, is discharged from the payment of the debt. The note being joint only, the plaintiff cannot recover thereon against Bishop's administratrix.

Upon the death of one of the makers of a joint note his representatives are, at law, discharged, and the survivor alone can be sued.—*Towers* vs. *Moor,* 2 Vern., 98; *Simpson* vs. *Vaughan,* 2 Atk., 31; *Richter* vs. *Poppenhausen,* 42 N. Y., (3 Hand,) 375; *Boykin* vs. *Watson's Administrators,* 1 Tr. Con. Rep., 157.

If the joint maker, so dying, be a surety merely, his estate is absolutely discharged, both at law and in equity, the survivor only being liable.—*Getty* vs. *Binsee,* 49 N. Y., (4 Sickels) 385; *Pickersgill* vs. *Lahens,* 15 Wall., 143; *United States* vs. *Price,* 9 How., 91; *Rawstone* vs. *Parr,* 3 Russell, 424, 539.

This principle has been well settled and established by the Courts of this country and in England. It is fully discussed in the foregoing cases, wherein numerous authorities, American and English, are cited, all sustaining the doctrine and showing a uniform current of decision.

In the case of *United States* vs. *Price*, (9 How., 91,) the Court say: "The obligation of a surety arises only from positive contract. The liability is construed strictly, both at law and in equity, and the liability of the surety cannot be extended by implication beyond the terms of his contract. If he contracts jointly with his principal, it is a legal consequence, known to all parties, that his personal estate will be discharged in case he should die before his principal. Such being the law, it may be considered as part of the written condition of the bond, and equity will not interfere to extend the liability as against his estate on the ground that such discharge arises from the mere technicalities of the law."

In *Getty* vs. *Binsee*, (49 N. Y., 385,) the Court, after saying the survivor is discharged at law, proceed: "It seems to be equally well settled that if the joint obligor, so dying, be a surety, not liable for the debt irrespective of the joint obligation, his estate is absolutely discharged, both at law and in equity, the survivor only being liable. In such case, where the surety owed no debt outside and irrespective of the joint obligation, the contract is the measure and limit of his obligation. He signs a joint contract and incurs a joint liability, and no other. Dying prior to his co-maker, the liability all attaches to the survivor."

In the case of *Rawstone* vs. *Parr*, (3 Russ., 424, 539,) creditors claimed to prove a joint note against the estate of a deceased surety, the surviving makers and principals being insolvent. The Master of the Rolls allowed the claim, but his decree was reversed by the Chancellor, Lord Lyndhurst.—See also notes to *Thomas* vs. *Frazier*, 3 Ves., Jr., 399.

The case of *Pickersgill* vs. *Lahens*, (15 Wall., 143,) is the latest, and is also directly in point. The Court say: "It is very clear that the estate of Lafarge is discharged at law from the payment of the obligation in controversy on the familiar principle that if one of two joint obligors die the debt is extinguished against his representative and the surviving obligor is alone chargeable. It is equally clear that in this class of cases, where the remedy at law is gone, as a general rule a Court of equity will not afford relief, for it is not

a principle of equity that every joint covenant shall be treated as if it were joint and several. The Court will not vary the legal effect of the instrument by making it several as well as joint, unless it can see, either by independent testimony or from the nature of the transaction itself, that the parties concerned intended to create a separate as well as a joint liability. If, through fraud, ignorance or mistake, the joint obligation does not express the meaning of the parties, it will be reformed so as to conform to it. This has been done where there has been a previous equity which gives the obligee a right to a several indemnity from each of the obligors, as in the case of money lent to both of them. There a Court of equity will enforce the obligation against the representatives of the deceased obligor, although the bond be joint and not several, on the ground that the lending to both creates a moral obligation in both to pay, and that the reasonable presumption is the parties intended their contract to be joint and several, but, through fraud, ignorance, mistake or want of skill, failed to accomplish their object. This presumption is never indulged in the case of a mere surety, whose duty is measured alone by the legal force of the bond, and who is under no moral obligation whatever to pay the obligee, independent of his covenant, and, consequently, there is nothing on which to found an equity for the interposition of a Court of chancery. If the surety should die before his principal, his representatives cannot be sued at law, nor will they be charged in equity. The general doctrines on this subject were presented at large in this Court in the case of the *United States* vs. *Price*, (9 How., 91,) and they are sustained by the text writers and books of report in this country and in England."

The principle is recognized as well settled by the Court of Appeals of this State. Chancellor Harper, delivering the opinion of the Court in the case of *Pride* vs. *Boyce*, (Rice's Eq., 288,) says: "Upon an examination of the cases, they seem to establish a rule of this sort: that if the joint obligation be created merely by the bond or covenant where there was no previous liability, in that case no relief will be afforded against the estate of the deceased obligor in the event of the insolvency of the survivor; but if there was an antecedent debt to which both parties were liable, as in the case of partners, then the Court infers, without direct proof, that the instrument was made joint by mistake, and relieves, accordingly, by setting it up as a joint and several bond."

But it will be said the decisions in South Carolina are otherwise. The cases are three in number, to wit: *Executor of Shubrick* vs. *Executor of Livingston*, 1 DeS., 320; *Lainhart* vs. *Administrator of Reilly*, 3 DeS., 590; *Smith* vs. *Martin*, 4 DeS., 149. These cases are all upon joint bonds, and the estate of the surety was held liable; but the point was not urged that the estate of the surety was discharged *because he was surety*, but merely because he was *dead*. The argument was that the estate of a deceased joint obligor is discharged in equity as well as at law—this·without reference to his situation, whether as principal or surety. This will appear from the opinion of the Court and the authorities cited by the Court and counsel. *Not one of the authorities cited by the Court or counsel in either of the cases sustain the position that the estate of the surety will be held liable.* In the first case, (*Shubrick* vs. *Livingston*,) two authorities only are cited in the opinion, viz., *Ratcliffe* vs. *Graves*, (Vern., 196,) *Skip* vs. *Huey*, (3 Atk., 91,) in both of which the bonds were joint and several, and they were cited on another question. *Simpson* vs. *Vaughan*, (2 Atk., 31,) *Bishop* vs. *Church* (2 Ves., 100, 371,) and *Rivers* vs. *Kennedy* are cited by counsel. In the case of *Rivers* vs. *Kennedy* the bond was joint and several. In *Bishop* vs. *Church* the condition of the bond was joint and several, and each of the obligors participated in the consideration. [See this case cited in *Hoare* vs. *Contencin*, 1 Brown's C. C., 27; *Rawstone* vs. *Parr*, 3 Russ., 424, 539; *Thomas* vs. *Frazier*, 3 Ves., 399.] In *Simpson* vs. *Vaughan* the bond was joint only, but it was given by Nut & Baker, partners, (so styled in the bond,) for a joint loan, and for that reason the Court relieved. But the Lord Chancellor says "it cannot be laid down as an invariable rule that the Court will do it in every case."

In the second case, *Lainhart* vs. *Administrator of Reilley*, two authorities only are cited, viz., *Executors of Shubrick* vs. *Executors of Livingston*, *supra*, and *Madox* vs. *Jackson*, 3 Atk., 406. In the case of *Madox* vs. *Jackson*, the bond was joint and several. Lord Thurlow says, in *Hoare* vs. *Contencin*, 1 Br. C. C., 27: "The case in Atkins [*Madox* vs. *Jackson*] has nothing to do with it; it is the case of a joint and several bond."

In the third case, *Smith* vs. *Martin*, (4 DeS., 149,) three cases only are referred to by the Court, viz.: *Primrose* vs. *Bromley*, *Administrator of Mead*, 1 Atk., 90; *Bishop* vs. *Church*, 2 Ves., 100, 371; *Thomas* vs. *Frazier*, 3 Ves., 399. In *Primrose* vs. *Bromley*,

Moore, Mead and another were assignees of a bankrupt, and gave bond to account for such sums as they, or *either of them,* might receive. The Lord Chancellor held the bond to be several as well as joint. Besides Mead was a principal and had received moneys as assignee. As to *Bishop* vs. *Church,* see above. In *Thomas* vs. *Frazier,* the bond was given by John and Walter Ewer, partners, and the intention of the parties to be bound severally was admitted. The cases cited by counsel are *Simpson* vs. *Vaughan* and *Madox* vs. *Jackson,* already referred to.

These cases should be overruled.—1 Kent., 477; *Seabrook* vs. *Seabrook,* 10 Rich. Eq., 507, 508. But it is not essential to the success of the defendant here that they should be overruled. Each of the three cases are upon *bonds,* and the obligors bound themselves, *their heirs, executors and administrators.* Not so here. "Where the obligation exists only in virtue of the covenant, its extent can be measured only in the words in which it is conceived."—*Sumner* vs. *Powell,* 2 Mer., 36. "The surety has a right to stand upon the very terms of his contract. Courts of equity construe their contracts with strictness, and they are not to be bound by implication beyond the very terms of the contract."—*Miller* vs. *Stewart,* 9 Wheat., 681.

*Johnson,* contra:

1. The obligation of the two makers of the joint note identical as to the payee.

2. At common law the distinction between joint contracts and contracts joint and several had relation to the remedy.

3. The reason for this distinction was unknown in chancery, and under the Code does not exist.

4. A contract joint in its terms is in effect joint and several.

5. The surviving joint debtor being insolvent, the estate of L. Gordon Bishop is liable for the whole debt.

1. The obligation of the two makers of the joint note is identical as to the payee.

They are both absolutely bound by the terms of the instrument for the payment of the money. The extrinsic fact that one was a surety can raise no equity against the payee, there being no allegations of acts upon the part of the payee that would release a surety. None are pretended.— *Carson* vs. *Hill & Jones,* 1 McM., 77; Story on Procedure Notes, 1.

2. At common law the distinction between joint contracts and contracts joint and several had relation to the remedy.

In *Collins* vs. *Griffith*, (2 P. Wms., 313,) the Chancellor, speaking of a joint and several obligation, said: "The creditor lent his money upon terms to have a security upon which he might *sue* the obligors severally if he thought fit." · In *Ayer* vs. *Admin. of Buford*, (2 Mill., 319,) the Court held the estate of the deceased joint debtor was discharged, for the reason that the form of the contract required that the joint debtors should be *sued* together; and since the same judgment could not be rendered against the survivor and the representatives of the deceased, the survivor and the representatives could not be joined.—11 Johns., 101; Chitty on Bills, 155.

3. The reason for this distinction as to the remedy was unknown in chancery, and under the Code does not exist.

The remedy was only a question of jurisdiction.—*Ayer* vs. *Admin. of Buford*, 2 Mill., 321. Since there was no plain or adequate remedy at law, the Courts of equity have uniformly had jurisdiction.—*Primrose* vs. *Bromley*, 1 Atk., 89; *Cowel* vs. *Sikes*, 2 Russ., 191; *Lainhardt* vs. *Reilly*, 3 DeS., 148; *Smith* vs. *Martin*, 4 DeS., 148.

In *Cowel* vs. *Sikes*, (2 Russ., 191,) "in a creditor's suit for administering the assets of B, a joint creditor of A and B was permitted to prove, A having become bankrupt, and it appearing that there were no joint assets of A and B."

In *Simpson* vs. *Field*, (2 Cases in Ch., 22,) the estate of the deceased obligor, being a surety, was held discharged, as the *remedy* at law had been lost. It had been lost by a strict adherence to the inflexible rules of pleading of the Courts of common law.

Sections 141 and 159 of the Code of Procedure annul the common law rule, adopt the rules of chancery, and all persons "necessary to a complete determination of the questions involved" are to be made parties.—*Yorks* vs. *Peck*, 9 How. P. R., 201; *Voorhies* vs. *Baxter*, 1 Abb., 45; *West* vs. *Randall*, 2 Mason, 181; 2 Atk., 510; *Leigh* vs. *Thomas*, 3 Ves., 312; *Trescot* vs. *Smith*, 1 McC. Ch., 301.

This appears to be reasonable, notwithstanding the instrument creating the debt is joint. It is, nevertheless, a debt, and should bind the estate after the death. The obligation makes the estate, and not the person, liable.

The administrator representing the intestate can maintain, and is liable to, any action arising *ex contractu* as effectually as the intestate.—Co. Lit., 209; 1 Comyn on Contracts, *528.

4. A contract joint in its terms is in effect joint and several.

This proposition is but a corrollary of the preceding. It must be true, since a judgment against joint debtors can be satisfied from the joint property, or the seperate property of each.

5. The surviving joint debtor being insolvent, the estate of L. Gordon Bishop is liable for the whole debt.

This is also a corollary of foregoing propositions, but is supported by additional authority and precedents.

The contract of Bishop survives, the remedy remains, the estate is primarily and only liable, and it is expressly held in *Lainhardt* vs. *Reilly* (3 DeS., 590,) and in *Smith* vs. *Martin* (4 DeS., 148,) that the estate of a deceased *surety* is liable for the whole debt, the principal being insolvent.

Therefore His Honor the presiding Judge was correct in directing the jury to find for the plaintiff against the defendants.

October 29, 1878.   The opinion of the Court was delivered by

McIver, A. J.   This was an action on a note, of which the following is a copy:

"$100.   One day after date we promise to pay A. E. Susong one hundred dollars for value received.

"February 10, 1874.

his

"W. H. + VAIDEN.

mark.

"L. G. BISHOP.

"Witness:   J. C. Hix."

The defendant, Vaiden, did not appear, and, therefore, the plaintiff was entitled to judgment against him.   The defense set up by the other defendant was that the note being a *joint* note, and L. G. Bishop having signed the same as surety merely, and not being liable for the debt except by reason of such signing, his estate, upon his death, was absolutely discharged, both in law and equity, and the survivor alone was liable.

The survivorship and insolvency of Vaiden, as well as the fact that the note was given for a debt due by Vaiden alone, Bishop being merely a surety, and having received no benefit from the consideration, were admitted.   On the trial the Circuit Judge charged

the jury that the note sued on was in effect a joint and several note, and that the verdict should be for the plaintiff against both defendants, to which charge the appellant excepted. It is obvious that this exception was well taken. We can see no ground whatever to warrant such a charge.—Story on Prom. Notes, § 57; 1 Story Eq. Jur., § 164. The note was, upon its face, plainly a joint and not a joint and several note, and there was no evidence whatever to show the contrary, even if such evidence were admissible under the state of the pleadings. The defendant, who is appellant, requested the Circuit Judge to charge that a note commencing "we promise to pay" is a joint note if signed by two or more. This the Circuit Judge charged, but added the words "under certain circumstances," to which qualifying words appellant excepted. This also was error; for while there are cases which hold that in equity a note signed by a partnership, commencing "we promise," is in effect the joint and several note of the several partners, and while there are other cases which hold that an obligation in form joint may, in equity, be shown to have been so drawn by mistake, and that in fact the real intention was that it should be joint and several, yet there was nothing in this case to warrant any such instruction. For, in determining the correctness of any proposition of law given to the jury for their guidance, we must necessarily look to the circumstances of the case to determine whether it was right in the particular case submitted. We do not sit here for the purpose of determining mere abstract questions of law, but to decide whether the law, as applicable to a particular case made, has been correctly stated. Indeed, we think that the Circuit Judge practically reversed the rule of law, for, as we understand it, the rule is that a note signed by two or more, commencing "we promise to pay," is a joint note and not a joint and several note, but that, under certain circumstances, indicated above, such a note may be treated in equity as a joint and several note. The appellant also requested the Circuit Judge to charge that "upon the death of one of the makers of a joint promissory note, who was not liable for the debt irrespective of the joint obligation, but who signed the note simply as surety, his estate is absolutely discharged, both in law and equity and the survivors only are liable."

The Judge charged in accordance with this request, but added "that it had no application to this case," to which additional words appellant excepted. In this also we think there was error. For if,

as we have seen, the Court below erred in instructing the jury that the note, though in form joint, was in effect joint and several, then the proposition of law involved in this last mentioned request was not only directly applicable but might be conclusive of the case; because, if such proposition is well founded, then the verdict should have been in favor of the defendant, Bishop. It becomes necessary, then, for us to consider and determine whether such proposition can be maintained; and indeed this was the only question argued here. It must be admitted that this proposition is fully sustained by the authorities outside of this State, a full and fair statement of which will be found in appellant's brief; but, on the other hand, the authorities in this State are to the contrary.—*Shubrick* vs. *Livingston*, 1 DeS., 322; *Lainhardt* vs. *Reilly*, 3 DeS., 591; *Smith* vs. *Martin*, 4 DeS., 151.

These cases distinctly hold that upon the death of one of two or more obligors who was a mere surety, while his estate is discharged at law, it is not in equity. This proposition, while not distinctly decided, inasmuch as the direct question did not arise, seems to have met the approbation of Nott, J., in *Fescot* vs. *Smith*, (1 McC. Ch., 304,) and of Cheves, J., in *Ayer* vs. *Buford*, 2 M. Con. Rep., 321. It is very true that Harper, Ch., in *Pride* vs. *Boyce*, (Rice Eq., 288,) does say that "upon an examination of the cases they seem to me to establish a rule of this sort: that if the joint obligation be created merely by the bond or covenant, where there was no previous liability, in that case no relief will be afforded against the estate of the deceased obligor in the event of the insolvency of the survivor. But if there was an antecedent debt to which both parties were liable, as in the case of partners, then the Court infers without direct proof that the instrument was made joint by mistake, and relieves accordingly, by setting it up as a joint and several bond; and on a still stronger equity it should seem that where there was an antecedent debt to which the deceased obligor was solely liable, would the Court set it up as his several debt, in favor of the obligee, where the surviving obligor proves insolvent?" This, however, so far as it states the rule as contended for by appellant, was a mere *dictum*, for the question in *Pride* vs. *Boyce* was whether the assets of McCauley's estate could be applied to the payment of a joint note signed by McCauley as principal and Pride as surety, and it was held that they could. Indeed, it can scarcely be called a *dictum* of that distinguished Chancellor, for it will be observed that he

does not state the rule as one which he approves, but merely as one established by the cases; and an examination of his opinion shows that the cases from which he deduced this rule are all English cases, and he does not mention or refer to a single one of the cases in our State above cited.

It is argued, however, that the decisions in this State which establish the contrary of the proposition contended for by appellant are all cases on bonds in which the obligors, in terms, bind not only themselves but also their heirs, executors and administrators, while the case now under consideration is an action on a promissory note, by which the makers do not, in terms, bind their heirs, executors and administrators. This is true so far as the form of words go, but in substance and effect the obligation, so far as this point is concerned, is the same under a promissory note as under a bond. In a bond the obligor binds specifically his heirs, executors and administrators, while in a promissory note he does not. But in the case of a bond the obligee can only enforce the obligation as against the heir to the extent of the value of the land of the obligor which may have descended to him, and as against the executor or administrator to the extent of the value of the assets of the obligor which have or ought to have come into his hands, and this he can in the case of a promissory note. So that we are at a loss to perceive the practical difference in this repect. We do not, therefore, think that the decisions in this State should be confined to actions on bonds. The Court evidently did not rest their decisions upon any such ground, for, while that circumstance was adverted to in two of the cases, it is not even mentioned in the third.

Again, it has been urged that in order to bring the law in this State into conformity with the law as declared in other States in the Union, as well as by the Supreme Court of the United States, these decisions should be overruled. To this proposition we have given that careful attention which its gravity demands; but, after mature and deliberate consideration, we are unable to give our concurrence to the rule as established elsewhere, and, therefore, we see no reason for disturbing the rule as established by our own decisions. It seems to us that the rule contended for by the appellant had its origin in and rests entirely upon strictly technical doctrines incident to the common law rules of pleading, which are now no longer of force in this State. We are unable to perceive any good ground growing out of the nature of the rights and duties incident

to a joint contract upon which it can rest, though we can readily perceive how it grew up, from the nature of the remedies provided, by the old rules of the pleading.   By those rules it was not allowable to bring a joint action at law against a living obligor and the representatives of a deceased co-obligor, for the reason only that the judgment against the survivor would be *de bonis propriis*, while that against the representatives would be *de bonis testatoris*, and the common law did. not tolerate a double judgment in one action. That this was purely technical, and that there was no inherent difficulty in the way, is conclusively shown by the practice of the Court of Equity, and by the practice under the Code of Procedure, under which such judgments have been and are in constant use.   By another rule of that system of pleading it was required that where an action was brought upon a joint contract it was necessary that all the living co-contractors should be joined in the action.

These rules lead legitimately to the conclusion that in case of the death of one of two or more joint contractors his representatives were absolutely discharged from any action at law.   Then, by the aid of the equity doctrine,—that where a surety is not bound at law he will not be made liable in equity,—the conclusion was reached that upon the death of one of two or more joint obligors, who is liable only as a surety, his estate is absolutely discharged both at law and in equity.   The fault of this reasoning, as it seems to us, is to be found in the fact that the distinction between being discharged from suit at law and being discharged from the obligation to perform the contract is lost sight of.   There is no difficulty in understanding how, under the common law rules of pleading, the estate of the deceased co-obligor could not be pursued in an action at law, and how it could be properly said that such estate was discharged from *such action;* but it is not only difficult but absolutely impossible for us to understand how the death of the party can discharge his estate from his obligation to fulfill his contract.   The *remedy* at law may have been gone because of the want of proper machinery in that Court to put it into practical operation, but the duty to perform the contract still remains—the obligation is not discharged.   There is nothing in the nature of the rights and duties growing out of joint contracts which warrants the conclusion that the death of one of the co-contractors destroys the right or discharges the obligation which grows out of such contracts.   It is said that the surety by signing a joint contract incurs a *joint liability*

and no other. If this be true, carried to its legitimate result, it would necessarily lead to the conclusion that when a joint judgment is recovered upon a joint contract, against two or more obligors, their joint property could alone be made liable, whereas we know the contrary to be well established law, and that the judgment in such a case may be enforced as well against the separate property of either of the co-obligors as against their joint property. We do not think, therefore, that the authorities which have been relied upon as sustaining the proposition contended for by the appellant rest upon a satisfactory foundation, and we are unwilling to over-rule the decisions in this State establishing the contrary. Indeed, since the adoption of the Code of Procedure, which, in conformity to the requirement of the Constitution, has provided that justice shall be administered in a uniform mode of pleading without distinction between law and equity, we can see no reason why the representatives of a deceased co-obligor, who was a mere surety, may not be joined with the surviving obligor in an action upon a joint bond or note, as in this case.

While, therefore, as we have seen, errors were committed by the Circuit Judge in his charge to the jury, we do not regard such errors as material in this case; for upon the principles herein established the verdict should have been as it was, and we do not, therefore, feel called upon to disturb it because of errors which could not change the result of the case. For as the case made depended exclusively upon the question of law above determined, it was the duty of the Circuit Judge to have instructed the jury to find for the plaintiff against both of the defendants; and although the reasons assigned by the Circuit Judge for such instruction are not well founded in law, yet as the instruction was right in itself it must be sustained.

The judgment of the Circuit Court is affirmed.

*Willard,* C. J., and *Haskell,* A. J., concurred.